Argued and submitted March 5; sentence of death vacated, and case remanded to circuit court for resentencing November 12, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAYTON LEROY ROGERS,
*Defendant-Appellant.*

(CC CR8800355, CR8800356, CR8800357,
CR8800358, CR8800359, CR8800360)
(SC S063700)

499 P3d 45

Defendant was convicted of multiple counts of aggravated murder in 1989. In his fourth penalty-phase proceeding, in 2015, he was sentenced to death. While defendant's appeal from that proceeding was pending, the legislature enacted Senate Bill 1013 (2019), which narrowed the definition of aggravated murder to exclude the theories under which defendant had been convicted. *Held*: In light of *State v. Bartol*, 368 Or 598, 496 P3d 1013 (2021), defendant's death sentence was disproportionate in violation of Article I, section 16, of the Oregon Constitution.

The sentence of death is vacated, and the case is remanded to the circuit court for resentencing.

On automatic and direct review of the sentence of death imposed by the Clackamas County Circuit Court.

Thomas Rastetter, Judge.

Ryan T. O'Connor, O'Connor Weber LLC, Portland, and Richard L. Wolf, Richard Wolf PC, Portland, argued the cause and filed the briefs for appellant.

Dayton Leroy Rogers filed the supplemental brief *pro se*.

David B. Thompson, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Colm Moore, Assistant Attorney General.

Karen A. Steele, Salem, and Frank E. Stoller, Dundee, filed the brief for *amicus curiae* Marco Montez.

Karen A. Steele, Salem, filed the brief for *amici curiae* Randy Lee Guzek and Robert Paul Langley, Jr.

Bert Dupré and Kenneth A. Kreuscher, Portland, and Mark A. Larrañaga, Seattle, filed the brief for *amicus curiae* Michael Martin McDonnell.

Before Walters, Chief Justice, and Nakamoto, Flynn, Duncan, Nelson, and Garrett, Justices, and Durham, Senior Judge, Justice pro tempore.*

NELSON, J.

The sentence of death is vacated, and the case is remanded to the circuit court for resentencing.

_____
    * Balmer, J., did not participate in the consideration or decision of this case.

**NELSON, J.**

In 1989, defendant was found guilty of multiple counts of aggravated murder in six consolidated cases and sentenced to death. In his initial appeal, we affirmed his convictions but reversed his death sentences and remanded for resentencing. *State v. Rogers*, 313 Or 356, 836 P2d 1308 (1992) (*Rogers I*). We have reversed sentences of death in this case and remanded for resentencing on two subsequent occasions, most recently in 2012. *See State v. Rogers*, 330 Or 282, 4 P3d 1261 (2000) (*Rogers II*); *State v. Rogers*, 352 Or 510, 288 P3d 544 (2012) (*Rogers III*). In his fourth penalty-phase trial, in 2015, defendant again received a sentence of death in each of the consolidated cases. This is an automatic and direct review of those sentences. ORS 138.052(1). For the reasons set out below, we reverse defendant's sentences of death and remand this case to the trial court for resentencing.

We described much of the relevant factual and procedural background in one of the prior appeals:

> "Over a period of time in 1987, police discovered the bodies of seven women in the Molalla Forest. The State Medical Examiner determined that each of the women had been stabbed or cut with a sharp object. When the bodies were discovered, defendant was in police custody as a suspect in the killing of another woman, Smith. Smith had died from multiple stab wounds. Smith and the seven women buried in the Molalla Forest were prostitutes. The facts surrounding the Molalla Forest killings shared other similarities with those surrounding the Smith killing. During the investigation of the Molalla Forest killings, defendant was convicted of aggravated murder for killing Smith, but he was not sentenced to death.
>
> "In May 1989, defendant was found guilty of 13 counts of aggravated murder arising out of six of the Molalla Forest killings."

*Rogers II*, 330 Or at 284 (footnote omitted). We explained the breakdown of those charges as follows:

> "Defendant was charged in a separate indictment for each victim. In each indictment, he was charged with one count of aggravated murder in the course of torturing the victim,

ORS 163.095(1)(e) [(1987)], and aggravated felony murder in the course of kidnapping, ORS 163.095(2)(d) [(1987)]; ORS 163.115(1)(b)(E) and (F) [(1987)]. In one indictment, defendant was charged with a third count of aggravated murder for murder in the course of sexual abuse. ORS 163.095(2)(d) [(1987)]; ORS 163.115(1)(b)(H) [(1987)]."

*Rogers II*, 330 Or at 284 n 2. As noted, those convictions were affirmed by this court in *Rogers I*. This appeal concerns the death sentences that were imposed in defendant's fourth penalty-phase trial in 2015.

On appeal to this court, defendant filed an opening brief challenging his death sentences on numerous grounds.[1] While briefing in this case was ongoing, the legislature enacted Senate Bill (SB) 1013 (2019), which made significant changes to Oregon's death penalty statutes. After SB 1013 took effect, defendant filed a supplemental opening brief raising additional assignments of error relating to the effect of SB 1013 on this case. In part, defendant's supplemental brief incorporated by reference arguments about the effect of SB 1013 that were made in *State v. Bartol*, 368 Or 598, 496 P3d 1013 (2021). In its answering brief, the state incorporated by reference the arguments that it had made in its supplemental briefs in *Bartol*.

In *Bartol*, this court addressed a constitutional challenge by a defendant to his death sentence in light of SB 1013. There, we explained that,

"[p]rior to the enactment of SB 1013 in 2019, Oregon had two categories of murder: 'murder' and 'aggravated murder.' 'Murder' was defined to include certain forms of criminal homicide, ORS 163.115(1) (2013), *amended by* Or Laws 2019, ch 635, § 4, and 'aggravated murder' was defined as '"murder" *** committed under, or accompanied by,' any one of 12 enumerated aggravating circumstances, ORS 163.095 (2013), *amended by* Or Laws 2019, ch 635, § 1. Thus, prior to SB 1013, murder committed under or accompanied by any one of 12 aggravating circumstances could result in a death sentence. ORS 163.105(1)(a) (2013); Or Const, Art I, § 40.

---

[1] Portions of defendant's brief appear to renew prior challenges to his convictions. We reject any challenge to the guilt phase without further discussion.

"SB 1013 changed that. It created a new category of murder, 'murder in the first degree'; reclassified all the forms of murder that previously had been 'aggravated murder' as 'murder in the first degree'; and provided a maximum sentence of life imprisonment without the possibility of parole for 'murder in the first degree.' Or Laws 2019, ch 635, §§ 1, 3(1), (2). Thus, SB 1013 eliminated the death penalty for all the forms of murder that had previously been eligible for it, including the form that defendant had committed—murder committed when confined to a penal or correctional facility or otherwise in custody."

368 Or at 601. Although SB 1013 retained the death penalty for narrower classes of conduct, none of the narrowed definitions applied in *Bartol*. *Id.* at 625.

SB 1013 had the same effect in this case. Defendant's convictions rest on three theories of aggravated murder. The first is that each murder "occurred in the course of or as a result of intentional maiming or torture of the victim." ORS 163.095(1)(e) (1987). The second and third theories were that defendant "personally and intentionally committed" the murders in the course of committing or attempting to commit kidnapping or first-degree sexual abuse. *See* ORS 163.095(2)(d) (1987); ORS 163.115(1)(b)(E), (F), (H) (1987). SB 1013 reclassified all of those theories of aggravated murder as first-degree murder. *See* Or Laws 2019, ch 635, §§ 1, 3; ORS 163.107(1)(e), (j). The conduct that defendant was found guilty of committing is no longer classified as aggravated murder, and it is no longer punishable by death. *See* ORS 163.107(2)(b) (providing that the maximum penalty for first-degree murder is life imprisonment without the possibility of parole).

As we explained in *Bartol*, that circumstance gives rise to a violation of the requirement, found in Article I, section 16, of the Oregon Constitution, that "all penalties shall be proportioned to the offense."[2] "The basic proportionality

---

[2] In *Bartol*, the state argued that the defendant's Article I, section 16, challenge was barred by Article I, section 40, which provides that, "[n]otwithstanding sections 15 and 16 of this Article, the penalty for aggravated murder as defined by law shall be death upon unanimous affirmative jury findings as provided by law and otherwise shall be life imprisonment with minimum sentence as provided by law." We explained in *Bartol* that "the only challenges to the death penalty that Article I, section 40, bars are those that are entirely incompatible with the

concept that the gravity of an offense should correspond to the severity of the punishment gives rise to special rules for the death penalty." *Bartol*, 368 Or at 621. That is because death is "'an unusually severe punishment, unusual in its pain, in its finality, and in its enormity.'" *Id.* at 622 (quoting *Furman v. Georgia*, 408 US 238, 287, 92 S Ct 2726, 33 L Ed 2d 346 (1972) (Brennan, J., concurring)). As a result, the proportionality requirement of Article I, section 16, entails that "the death penalty must be reserved for the 'worst of crimes,' and that there must be a 'fundamental, moral distinction' between crimes that are punishable by death and those that are not." *Bartol*, 368 Or at 623 (quoting *Kennedy v. Louisiana*, 554 US 407, 438, 446-47, 128 S Ct 2641, 171 L Ed 2d 525 (2008) (internal citations omitted)).

In *Bartol*, we held that,

> "[a]lthough the legislature did not make SB 1013 retroactive as to sentences imposed before its effective date, the enactment of the bill itself reflects a judgment that conduct that was previously classified as 'aggravated murder' does not fall within the narrow category of conduct that can be punished by death, as opposed to lesser sentences, including life imprisonment."

368 Or at 625. We reached that conclusion because SB 1013 applies only to sentencings that occur after its effective date, regardless of when the crime was committed. Or Laws 2019, ch 635, § 30. As we explained in *Bartol*, "[t]hat provision shows that the legislature did not regard conduct committed before the effective date as more culpable than conduct committed after it." 368 Or at 624.

That "creates a proportionality problem: It allows the execution of persons whose conduct the legislature has determined is *not* the worst of the worst and whose culpability is *no different* from those who cannot be executed." *Id.* at 624 (emphases in original). For example,

> "if two persons jointly engaged in conduct that was previously classified as 'aggravated murder' but is now classified as 'murder in the first degree,' and the first person was

---

death penalty as a punishment for aggravated murder as a general matter." 368 Or at 612. The proportionality argument at issue here is not such a challenge. *Id.* at 613.

sentenced before SB 1013's effective date but the second person was sentenced after that date, the first person could be sentenced to death, but the second person could not."

*Id*. The result is that "whether a person who committed conduct that was previously classified as 'aggravated murder' but is now classified as 'murder in the first degree' can be sentenced to death depends on the person's sentencing date, not on the relative gravity of the conduct." *Id*.

That different treatment—of persons whose conduct the legislature has now determined does not differ in a way that justifies death—violates Article I, section 16. As we explained in *Bartol*, leaving the defendant's death sentence in place would "violate two special proportionality requirements that, under Article I, section 16, apply to the death penalty" in that

> "[m]aintaining his death sentence would allow the execution of a person for conduct that the legislature has determined no longer justifies that unique and ultimate punishment, and it would allow the execution of a person for conduct that the legislature has determined is no more culpable than conduct that should not result in death."

*Id*. We therefore vacated the defendant's death sentence and remanded the case for resentencing. *Id*. at 624-25.

The death sentences that were imposed in this case violate Article I, section 16, for the same reason. As in *Bartol*, we reverse the sentence of death and remand for resentencing. ORS 138.052(2)(a). That disposition, combined with the fact that defendant cannot be sentenced to death on remand, means that we do not need to address any of defendant's other challenges to his sentence.

The sentence of death is vacated, and the case is remanded to the circuit court for resentencing.